IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

LOUVADIA TABOR,

    Plaintiff,

V.                                       CIVIL ACTION NO. 3:04-0380

JOANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed her application on October 11, 1995, alleging disability as a consequence of back problems. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed an action seeking review of the Commissioner's decision.[1] The Court, perceiving deficiencies in the administrative proceedings, remanded the case to the Commissioner. Following a supplemental hearing, an administrative law judge again found plaintiff not disabled

---

[1] See, Civil Action No. 3:98-0649.

in a decision which became final when the Appeals Council denied her request for review. Plaintiff then filed this action seeking review of that decision.

At the time of the most recent administrative decision, plaintiff was fifty years of age and had obtained a high school education. Her past relevant employment experience consisted of work as a dishwasher, secretary and cook. In his decision, the administrative law judge determined that plaintiff suffers from "degenerative disc disease, fibromyalgia, diabetes, hypertension, atypical chest pain, depressive disorder NOS, panic disorder, borderline IQ, and alcohol abuse," impairments he considered severe. Though concluding that plaintiff was unable to perform her past work, [2] he determined she retained the residual functional capacity for a limited range of light level work. On the basis of this finding and relying on Rule 202.17 of the medical-vocational guidelines[3] and the testimony of a vocational expert, the administrative law judge found her not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff's medical history is significant for a number of chronic conditions. High blood pressure was treated with medication and appeared to be well-controlled. Diabetes was also treated with medication, as well as dietary changes, but it is not clear whether good control was ever obtained. Plaintiff did not allege, however, and the record does not document, any physical problems resulting from this disease or from hypertension. Though she claims to have had a myocardial infarction in the past, plaintiff produced no evidence which confirms this. In fact, a cardiac catheterization performed on May 3, 1994, revealed "no significant

---

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

coronary artery disease." She has continued to report that she experiences chest pain and has visited the emergency room on several occasions to have this evaluated; however, no evidence of a cardiac problem has been detected.

Plaintiff has a history of heavy cigarette smoking and has had treatment for bronchitis and upper respiratory infections. She is prescribed inhalers to use for shortness of breath and testified that, while they help somewhat, she still gets short of breath on exertion. Back and neck pain are alleged to cause a great deal of difficulty with walking, standing, lifting and sitting; however, while the evidence reflects treatment back to at least 1991 with CT scan and MRI evidence of degenerative changes at the L5-S1 level, treatment appears to have been sporadic. On October 19, 1995, she did report having back pain radiating down her right leg, but was doing exercises she had learned in physical therapy, was losing weight and was walking ten blocks daily. Low back tenderness was documented on exam as was X-ray evidence of degenerative disc disease, again at the L5-S1 level.

In December of 1995, plaintiff was evaluated at the Cabell Huntington Hospital Pain Management Center where she voiced complaints of constant, sharp pain in the low back radiating down the right leg as well as constant pain beginning at the base of the skull and going down the neck and across the shoulders. She also reported that she had pain in her wrists and weakness in her right hand. Examination revealed a normal gait, ability to stand and walk on the heels and toes without difficulty and to perform a full squat. Lumbar spine range of motion was reduced as was movement in the neck. No neurological deficits were observed. Noting that she had trigger points in a number of areas, Dr. Ozturk, the evaluator, diagnosed fibromyalgia. An X-ray at this time again showed degenerative disc disease at the L5-S1 level as well as degenerative changes of the right SI

joint. Plaintiff apparently went back to the pain management center only one other time when Dr. Ozturk discussed with her ways to manage her fibromyalgia. She expressed a desire not to have any injections and Dr. Ozturk's report reflects that he did not strongly recommend them, although plaintiff testified that he did want her to have injections and that is why she quit going to pain management.

Following this last appointment, plaintiff does not appear to have sought treatment again for nearly two years. In March of 1998, she went to Ebenezer Medical Outreach where she was treated for asthma, diabetes, hypertension, chest pain, arthritis and anxiety/depression.[4] Treatment notes from this facility are not detailed but do reflect complaints of, inter alia, right thigh musculoskeletal pain on May 27, 1998; left ankle sprain on September 15, 1998; chronic back pain on March 23, 1999; chest pain on September 28, 1999; eye strain on December 14, 1999, due to plaintiff sewing a great deal; knots on the upper thighs on August 8, 2000, diagnosed as surface varicosities; diabetic ulcers on both feet on October 19, 2000; and, complaints of back and neck pain in early 2001 with findings of tenderness and pain with movement resulting in a diagnosis of osteoarthritis.

Though plaintiff claimed to have had five or six cerebrovascular accidents ("CVA's") in the past, with the most recent one in approximately late 1974, she again has submitted no documentation for any of these episodes, and none of the examiners have noted any symptoms or findings attributable to these episodes.

---

[4] Previously, plaintiff was treated at University Physicians and Surgeons, but she testified she stopped going there because she could not afford it.

Despite plaintiff's allegations of extensive problems and limitations due to her physical impairments, the evidence reflects that she reported to a nutritionist on May 4, 1995, that she had a paper route and walked nine blocks daily performing this work. On October 19, 1995, she reported to a physician examining her that she walked at least ten blocks daily. When evaluated by psychologist Ken Devlin at the pain center on January 9, 1996, plaintiff again related she had a paper route which required her to get up at 3:00 a.m. each day and walk ten to twenty blocks, although she downplayed this when asked about it at the hearing. Additionally, plaintiff testified she performed work as a housekeeper beginning in August of 1999 while her claim was on remand. She worked with her sister twelve to twenty-four hours a week for a year, stopping because she could not handle it anymore. She also testified that she had begun to do this work again approximately two weeks before the hearing but on a less frequent basis.

Dr. Richard Starr reviewed the medical evidence for the administrative law judge and provided an expert medical opinion that plaintiff could lift and carry twenty pounds occasionally/ten pounds frequently; stand and walk a total of four to six hours per day, one to two hours at a time; sit without limitation; occasionally climb, balance, stoop, crouch, kneel and crawl; would have limited push/pull ability; and, should have limited exposure to heights, moving machinery, temperature extremes and vibration.

Plaintiff has a history of treatment for mental impairments and alleges this also contributes significantly to her disability. She indicated she had received therapy on and off but not between 1992 and 2000. She indicated she was seeing a psychologist through Ebenezer Medical Outreach once every one or two weeks and that this was helping "a little bit." She also stated that over the preceding two months she had been feeling better emotionally. The medical reports from

University Physicians and Surgeons and Ebenezer indicate that plaintiff has been treated with medication for anxiety and/or depression more frequently than with therapy. Little is noted about her symptoms or their severity in any of the reports, however. Ken Devlin, the psychologist at the pain management center, examined plaintiff on January 9, 1996, and observed a mildly depressed mood and psychomotor retardation. He diagnosed major depression, NOS, and pain disorder associated with psychological factors and general medical condition.

The Commissioner had plaintiff evaluated by Lisa Tate, M.A., on January 13, 2000. Her observations included that plaintiff was cooperative and appropriate with a depressed mood and restricted affect. Concentration was considered only mildly impaired. I.Q. scores were in the upper borderline range. Depressive disorder, NOS, and panic disorder without agoraphobia were the diagnoses. In addition to daily activities of sewing and visiting with her sister, plaintiff reported that two times per month she cleaned a house for pay, did laundry and mowed lawns[5] as well as shopping for groceries and cleaning her own home. Ms. Tate completed an assessment of mental residual functional capacity, finding that plaintiff possessed "good" (more than satisfactory) or "fair" (limited but satisfactory) abilities in all areas except understanding, remembering and carrying out complex instructions, which she rated as "poor" (seriously limited but not precluded).

Cynthia Clay, plaintiff's treating psychologist, submitted a statement that she had been treating plaintiff since August 15, 2000, for stress management, depression and anxiety. She also provided an assessment of work-related mental limitations. Unfortunately, the definitions of the terms used to denote the degree of limitation in each area are different from those used by Ms.

---

[5] Plaintiff testified that the only income she received was from doing odd jobs such as mowing lawns, sewing and house cleaning.

Tate. Ms. Clay rated most of plaintiff's abilities as "fair," defined as able to perform the activity satisfactorily "some of the time," and "good," able to perform satisfactorily "most of the time." She did consider plaintiff's abilities to perform at a consistent pace and adhere to basic standards of neatness and cleanliness to be "poor" (no useful ability to function). The state agency psychologists expressed opinions that plaintiff did not have a "severe" mental impairment in November of 1995 and March of 1996 and did not reassess the evidence on remand.

The administrative law judge, after considering the numerous reports in the record, concluded that Dr. Starr's physical assessment was most reasonable and adopted it but modified the restriction on climbing such that plaintiff was precluded from climbing ladders, ropes or scaffolds but could occasionally climb ramps or stairs. He noted these limitations were greater than those in the prior decision and gave plaintiff the "benefit of the doubt" considering the conservative nature of her treatment at Ebenezer during the period the case has been remanded. Based on these factors and its review of the record, the Court concludes that these findings are supported by substantial evidence.

With regard to work limitations related to plaintiff's depression/anxiety, the administrative law judge concluded that the assessment of mental functioning from Ms. Tate most accurately reflected the findings in the evidence. He acknowledged the opinion from Ms. Clay and her status as a treating source; however, he noted that she provided no objective findings or explanation for her conclusions, nor were there any treatment notes from her in the record. While a treating source's opinion on the nature and severity of a claimant's impairments can be entitled to controlling weight, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. §416.927(d). The administrative law judge provided a thorough explanation for giving Ms. Clay's opinions limited weight and his findings in this regard are supported by substantial evidence.

While plaintiff complained of significant limitations on her activities due to pain and anxiety/depression, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, determined that her credibility was poor. He noted, in addition to the conservative treatment for her impairments, that plaintiff's work as a housekeeper demonstrates an ability to handle simple work and to get to an assignment on time. He also noted inconsistencies between plaintiff's testimony as to the paper carrier work and what the evidence actually indicated on this as well as on other issues such as daily activities, ability to sleep and shortness of breath. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Finally, a vocational expert was present at the hearing and testified, in response to hypothetical questioning from the administrative law judge, that there were a significant number of light and sedentary jobs in the national economy which plaintiff could perform. While plaintiff asserts that the hypothetical questions were inaccurate because they presented plaintiff's residual functional capacity in two different scenarios, and the administrative law judge's findings were a mixture of the two, this argument is clearly unpersuasive. Review of the vocational expert's testimony reveals that the administrative law judge gave him an initial hypothetical question containing the "upper range" of what the medical expert assessed, i.e., ability to stand/walk for six hours per day, two hours without interruption. He also included the other limitations assessed by

Dr. Starr and the vocational expert responded that plaintiff could still do one of her past jobs. The administrative law judge then asked a second question in which he requested the vocational expert to interpret the medical expert's opinion more narrowly and to limit standing and walking to one to four hours, one hour without interruption, with the rest of the limitations remaining the same. The vocational expert was able to cite alternate light and sedentary jobs plaintiff could perform, although her past work would be eliminated. The administrative law judge's actual finding is that plaintiff could stand/walk four to six hours, one to two hours without interruption, along with the other limitations from the first hypothetical question. His findings are certainly within the range covered by the two questions and are consistent with and supported by the evidence.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity. Under such circumstances, the decision of the Commissioner should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: May 25, 2005

*[signature]*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE